The next case today is William Puig Martinez v. Novo Nordisk Incorporated, appeal number 191928. Ms. Vega, whenever you are ready. Thank you. Good morning, Your Honors. If it may please the court, my name is Monica Vega on behalf of Appellants. With the court's permission, I would like to reserve two minutes for rebuttal. Yes. Novo conducted terminations and rehiring of total disregard of Law 80's Article 2 and 3 Just Cause Requirements and Criteria. Novo did not have just cause for appellant's terminations and is unable to clear the discrimination presumption hurdle of Puerto Rico Law 100. The district court held that appellants met the prima facie case. In this case, in addition to establishing a prima facie case of discrimination, appellants created a jury issue as to the falsity of the employer's explanation and introduced additional evidence that one of the decision makers, John Thrasher, admitted to presenting false statements and that he was motivated by age-based animus and was principally responsible for appellant's terminations. We submit that Novo fails to prove by a profoundness of the evidence that discriminatory animus was not the motivation for the adverse employment actions. To overcome Law 100's presumption that age discrimination occurred, Novo alleged that appellants were terminated due to a reduction in force and a global reorganization. As stated by this court in Castillo-Ortiz v. American Airlines and explained by the Puerto Rico Supreme Court in Zapata-Vergil v. J.F. Montalvo, Law 80 allows the dismissal of employees if that decision is made as part of a company's reorganization that is so required and bona fide. There must be a causal link between the employee's termination and the reorganization's objective and business needs. Novo alleged that all DCS employees were terminated because the Puerto Rico sales district was eliminated. However, Novo admitted that it did not close its operations and maintained at all times its local office in Puerto Rico, Docket 80-4. Novo also admitted that he continued to conduct sales in Puerto Rico and that there was no time in which there was no sales in the Puerto Rico territory by Puerto Rico DCS. So the alleged elimination of the Puerto Rico sales district does not mean that Novo did not continue to operate and conduct sales through DCS in Puerto Rico. It only meant that the Puerto Rico district manager position was eliminated along with 11 DCS, but that the three remaining Puerto Rico DCS will now report to a district manager in Florida. The three DCS positions are within the Puerto Rico jurisdiction and subject to the purview of Law 80, regardless of the allegation that they report to a manager in Florida. They are not Florida positions. Novo clearly stated that the three rehired DCS employees maintained their tenure and continued to receive salary and benefits consistent with their DCS position in Law 80. Novo made direct reference to Law 80 Article 1 and the new DCS positions in its supplemental response to interrogatory, C Docket 82-2. The Puerto Rico DCS positions are subject to Law Article 3 of Law 80, as similarly stated by this court in Tarasco, York, D.C., which is American Airlines, Inc. Excuse me, counsel. Yes. I might be misunderstanding statutes, but I thought on Law 80 what the court said below in the alternative was if there was a certain payment and the payment was paid. Now, you have some suggestion in your brief that the payment amount was not sufficient. Right. I'll come back to that, but just so I understand the statute, do you agree that if they made the statutory payment, then you have no Law 80 claim? No, Your Honor. We believe that if Article 3 requires, if there is just cause under Article 2, you also have to comply with the exception criteria of Article 3. So, therefore, to establish just cause and for Law 80 termination to be valid, you would need to have compliance with both articles. Now, this report determined that there was just cause because there was a reorganization. But then we go on to argue that after that analysis, you have to bring in the Article 3 analysis, that there was just cause because there was a reorganization, but there were three vacant positions that could have been occupied by three most senior employees. In this case, it did not comply with the seniority retaining order in Article 3. So, there was no just cause. Counselor, are you saying that there has to be a correct determination under Law 80 in order to decide the Law 100 issue in this case, in this specific case? We believe that the discrimination, that the standard of review should have been under Law 100. In that case, after establishing a that there was actual just cause, which would be needed by NOVO to clear the hurdle of discrimination, they have to establish that there was just cause. In this case, we submit that they did not clear that hurdle. Okay, but I don't mean to step on Judge Kayada's questions, but on the Law 80 claim, how much money is actually at stake here, given that they made payments? Your Honor, what happens is that the severance payment would be applicable only in an Act 80 case. When you have an Act 80 case, and you're also arguing that there are damages because of discrimination, you also have to consider those damages. It's not just the Act 80 severance that has been claimed. So, I'm still confused. You've got a Law 100 claim, and you've got a Law 80 claim. Right. Okay, let's assume, and I don't mean to prejudge it, but let's assume the Law 100 claim is gone, that there's no discrimination, and we're dealing with the Law 80 claim. Then, I go to Judge given the payments that were made, what is actually still at issue? If there is no discrimination claim, and it's only the Law 80 claim, then it would be the severance payment that is provided by an Article 1. The problem is that we, aside from the discrimination issue, we are also claiming that the payment that was made was insufficient. Now, I understand. On that point, I looked through the record to see below if you offered the court any calculation at all as to what you say was due as compared to what was received, and I couldn't find it. Was I looking in the wrong place? Yes, Your Honor. We presented it not only in our memorandum in opposition to the summary judgment, but we also presented it in our opposition to the Statement of Unconsensual Facts. What were the amounts, Your Honor? What were they, so we can do the math? Because I didn't see any calculations. So, they paid $82,000 to one and $68,000 to the other. What's the amount that you say should be owed under Law 80? I don't have the exact amount at hand right now, but it was a higher amount, and it was a higher amount because we relied on the W-2 forms to establish what the salaries were. We also provided evidence regarding additional health benefits and other benefits as well. I didn't see it in your briefs either. Am I correct? There's no calculation in your briefs? Yes, there is in the briefs. Yes, Your Honor. Okay, well, where in your brief is that calculation? I'm sorry, not in the appeal brief. It is presented in the opposition's to a summary judgment, and they're also contained in the Statement of Unconsensual Facts, which is in the appendix. But you just don't remember what the numbers are. I don't, Your Honor. I'm sorry. There are two appellants, and I don't know the exact amount for both of them. Counsel, I have your opposition to summary judgment. Where would we find it in that? It would be on the section where I discussed the part about the severance. Yes. Defendant Novo Nordisk did not pay Masada. They made a payment which is less than the statutory Masada, and I don't see any calculation in that section. Your Honor, are you reading the memorandum or the Statements of Unconsensual Facts? I'm reading what you told me, the opposition to motion for summary judgment. That's all right. We'll go back and look through these things. I thought you could help us. Well, it is clearly on. There is a calculation on the opposition to the Statements of Unconsensual Facts. So, counsel, we have used up not only most, but all of your time with our questions. Why don't you take another couple of minutes to wrap up, and you have reserved some time. However, there may be additional questions as you go along. So, two more minutes. Okay. Your Honor, we understand that, one, that there was no compliance with the Article 2 and Article 3 seniority-based retention order. The factor of the appellant's seniority was not, and is not contained in any part of the opinion and order. It was not addressed at all, and it shouldn't be part of the criteria that the court is used to establish if there was discrimination or not. In this case, Article 3 requires that there be vacant positions, and it requires that the positions that were available would be under the same job classification. There were three positions available, and it was the exact same job classification. We have a statement of John Thrasher, which was relied in the brief, in the reply brief, which states that we do not know exactly what the job posting was, because they lied and they said it was a DCS-1, and they have previously submitted evidence of different types of DCS in the discovery process. So, there is a material, an issue that is in controversy, and we understand that the falsity of Novo's explanations established that there was a discriminatory intent, Your Honors. Thank you. We'll hear from Ms. Rodriguez now. If you could mute your audio and video, Ms. Vega. Yes, Your Honor. Good morning, Your Honors. May it please the Court, this is Melissa Rodriguez with Morgan, Lewis, and Bokius, and I represent Defendant Appellee Novo Nordisk. For the reasons that were articulated by the Puerto Rico District Court, as well as various other grounds in the record in this case, we respectfully submit that the District Court's decision granting summary judgment to Novo Nordisk and dismissing Plaintiff's claims in their entirety should be affirmed. First, summary judgments should be affirmed on Plaintiff's Pugh and Mendes age discrimination claims. At the outset, their claims under the Federal Age Discrimination and Employment Act are barred because they never exhausted their administrative remedies. It is undisputed they did not file a charge of discrimination with the EEOC or the Puerto Rico Anti-Discrimination Unit, and that failure alone bars recovery under the ADA. Furthermore, summary judgments should be affirmed on their age discrimination claims, both of them, because plaintiffs have presented no evidence from which a jury could infer that they were either terminated or not selected for the newly created positions because of their age. First, as the District Court correctly found, there is no direct evidence of age discrimination. There were some comments that were alleged, but this Court and others have found consistently that the type of comments that were alleged are age-neutral and do not demonstrate direct evidence of age discrimination. There is also no indirect evidence of age discrimination when it comes to either the ADA claim or the Law 100 claim. As a preliminary matter, this Court should find and affirm the District Court's ruling. The plaintiffs have not shown a prima facie case with respect to their ADA claim for the simple reason that they have not shown that significantly younger employees were selected over them for the three newly created positions. In fact, that's certainly not the case as for Mr. Mendez, who was only one year older than two of the individuals that were selected, and in fact a couple of months older, frankly, than one of those two individuals, and the third individual who was selected was also over the age of 40. Furthermore, even if plaintiffs had established a ADA claim or the Law 100 claim, no one or this has proffered, and if applicable for the Law 80 claim established, it's legitimate non-discriminatory reasons for all the actions that it took with respect to Mr. Puig and Mr. Mendez's employment. Specifically, Mr. Puig and Mr. Mendez were terminated along with all other Puerto Rico Diabetes Care Specialists and approximately 1,000 other employees across the world due to a reorganization that resulted in personnel reductions to save costs and increase productivity. Furthermore, they were not selected for the newly created positions that would report into the South District of Florida because during the interview process, the decision makers determined that other candidates were better suited for the position given the needs of the company at the time. Again, the individuals who were selected were all over 40, two of them only one year, again, actually months younger than Mr. Mendez, and both decision makers were over the age of 40 themselves. And counsel, as to the Law 80 claim, I understand you're pointing to the reorganization as the just cause there. Once that showing is made, is there any further showing that needs to be made in terms of whether or not a reorganization is triggered? With respect to the Law 80 claim, yes. After there is the just cause, and again we've shown here the reorganization, as Ms. Vega pointed out, seniority has to be taken into account until Law 80. But that only occurs for jobs that remain within the same occupational classification. And it is our position that the three newly created DCS positions were not within the same occupational classification because they were reporting into a different district, to a different supervisor, and had different goals and objectives and would be focusing on different products. But this court doesn't need to find that there was just cause under Law 80 to dismiss that claim, or the Law 100 claim for that matter either. Because as your honors pointed out, no one orders, out of an abundance of generosity and caution, decided to pay Law 80 severance to both Mr. Pugh and Mr. Mendez. And so even if there had been a mistake in terms of whether seniority should have been considered, because if you find that they were within the same occupational classification, the Law 80 claim is barred. Because Mr. Pugh and Mr. Mendez have already received their Law 80 severance, which is the exclusive remedy on their Law 80. There is no dispute of what the amounts that were paid were. There is no dispute that they were intended to be Law 80 severance, and that Mr. Mendez and Mr. Pugh understood those payments to be Law 80 severance. And there's also no dispute that they retained and never returned those payments. So the Law 80... What about, what about the amounts? The council couldn't point us, your opposing counsel couldn't point us to any calculations, but there's an assertion that Mendez should have got $85,880 instead of the $67,845, and then there's an assertion that the other person should have got some unspecified higher amount than the $82,127 paid. Have you got any calculations in the record that put to rest any claim that the amounts were just calculated wrong? Your Honor, we do not believe that the amounts were calculated wrong, and to your point, the plaintiffs have not established an issue of fact in that regard. As you pointed out, there is no calculation in that regard in this brief. In fact, on appeal, Mr. Pugh doesn't even tell us how much he believes he is owed under Law 80. We believe our calculations are in fact correct, and that the plaintiffs have not established an issue of fact with respect to the accuracy of those calculations. They rely, I understand, from their briefing below on their W-2s, but that does not suffice to raise an issue of fact. There are amounts in a W-2 that under established law, both before and after the Puerto Rico labor reform, there are certain amounts in a W-2 that are not to be included in the loyalty calculation, so they have failed to raise any issue of fact with respect to the accuracy of our payments. So counsel, I'm not suggesting anything here, at least not yet, but if there are disputed amounts under the Law 80 claim, having nothing to do with the substantive merits, but just the amounts, we think one is $67,000 plus up to $85,000, and the other is $82,000 plus up to some other amount. If that were resolved by way of settlement, would that make it impossible to decide the rest of the case, or are the Law 80 and Law 100 claims so intertwined that they both have to be decided? They do not, Your Honor. The Law 100 claim does not depend on whether or not there is just cause on the Law 80. That is part of the prima facie case that the plaintiffs have to show, and if they establish that there is no just cause under Law 80, all that happens is that the burden of persuasion then shifts to no minorities to establish its legitimate non-discriminatory reasons for determination and non-selection. This is not the same as just cause under Law 80. The Supreme Court of Puerto Rico has already said several times that an unjustified termination under Law 80 is not the same as a discriminatory termination. One does not necessarily mean the other. All that no minorities has to show, if that burden of persuasion is shifted to no minorities, is to establish its legitimate non-discriminatory reasons for determinations and not selection. And we've done that here, through the submission of affidavits, as well as documentary evidence that clearly shows that the reasons the Puerto Rico district were eliminated was due to this reorganization to save costs, and given the financial pressures that the company was facing, and that they decided to go from 14 DCSs in the island to three. And we also show through documentary evidence and affidavits the reason why Mr. Pug and Mr. Mendez were not selected for those three roles. Having shown that met our burden, then the burden shifts back under Law 100 to plaintiffs to show that age was the real reason for the discrimination, and I respectfully submit that they have not done that here. So we're prepared to decide the issues that are brought in front of us, but if there is any inclination on the part of parties to attempt to settle the Law 80 claims, we offer our court mediator, Judge Cordero will be available if you need it. All you have to do is let us know or just go directly to the mediator or let the clerk of court know if you wish to take that issue off the table. You don't need to respond, I'm just offering this up to both parties. And your timing is perfect, so we will move to rebuttal by Ms. Vega. Thank you, Your Honors. Your Honors, Article 80, excuse me, Law 80 Articles 2 and 3 require that in the case that there are available positions, you have to follow the seniority-based retaining order. The two requirements for the application of Article 3 is that there are vacant positions and that the positions are in the same job classification. We submit that this court is precluded from determining what the job classification was because no one submitted contradictory, both supporting and testimonial evidence. It was stated that the positions would belong to the DCS-1 classification and then it was stated that it was belied. John Thrash's declaration stating that it was a DCS occupational classification was not the correct occupational classification. So this court is... Counsel, Counsel, I understand Novo's, although they disagree with what you just said, they're saying, fine, we're gonna make the payment anyhow, assuming you're right, that these were the same positions and... Your Honor, what happens... I think if you thought the calculation is incorrect, you should just spell it out precisely and hand it to them. Your Honor, what happens is that if they are not able to establish just cause, the remedy is not just, well, I will pay you some money. The remedy then, there is a presumption that is triggered that the determination was in fact discrimination. So you have to, you have to comply and establish just cause, otherwise you, you activate Law 100 presumption of discrimination and that is what happened here. There was, there is no just cause for determinations and the excuse that the Novo presented was false. They said that they wanted to... So Counsel, this, I think this goes back to a question that was asked you earlier about whether, in order to decide the Law 100 issue in this case, the Law 80 issue must also be decided. And what I'm hearing is that it would be helpful to your side if the Law 80 issue were decided in your favor, but I haven't heard that it is absolutely required. You, you could, under Law 100, prevail if there was no just cause as well. In other words, it would be the same evidence that would support the discrimination claim. Is that right? Right, Your Honor. I mean, the standard of review here is not the McDonald's-Douglas framework, Your Honor. We're under Law 100, which is the applicable law here. And Law 100 is, as I said, activated if Novo is not able to establish just cause. So discrimination presumption is activated. And that was, that is what we're saying. So the remedy is not just the Law 80 severance payment, it is also the claims under the discrimination under Law 100. Yes, thank you. Other questions from the court? Your Honor, if I may? 30 seconds, certainly. Yes. Could we submit, Your Honor, a separate motion in which we calculate the severance payment, in case you don't find it in the record? Well, if it's, if it's not in the record, it's, it's not in the record. But the, the offer to, the offer that we made earlier, that if counsel wishes to talk about resolving that issue, that's certainly up to you. But thank you. Okay, thank you, Your Honor. Attorney Vega and Attorney Rodriguez, you should disconnect from the hearing at this time.